IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CORREE M. ROOFENER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-6216-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

Richard F. McGinty
McGinty & Belcher, P.C.
P. O. Box 12806
Salem, Oregon 97309

   Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Page 1 - OPINION AND ORDER

>David R. Johnson
>Michael McGaughran
>Social Security Administration
>Office of the General Counsel
>701 Fifth Avenue, Suite 2900, M/S 901
>
>>Attorneys for Defendant

KING, Judge:

Plaintiff Corree Roofener brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Roofener's fibromyalgia was a severe impairment but did not meet or equal a listed impairment in step three of the analysis. After reviewing Roofener's daily activities, the ALJ found that she was not entirely credible in light of the daily activities and treatment record. For the same reason, the ALJ gave little weight to Roofener's treating physician, Dr. Ewanchyna, and also found that Roofener's spouse was not entirely credible. The ALJ concluded that Roofener retained the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; could stand and walk 2 hours out of an 8-hour day; could

sit 6 hours out of an 8-hour day; could not climb ladders, ropes, or scaffolds; was limited to no more than occasional overhead reaching; and could occasionally stoop, kneel, crouch, and crawl. Based on testimony from a vocational expert, the ALJ found that Roofener could return to her past work as a medical insurance clerk and patient registration clerk, both sedentary jobs, and thus was not disabled under the Act.

## FACTS

Roofener, who was 29 years old on the date of the ALJ's decision, alleges that she has been disabled since October 15, 2002 due to fibromyalgia. Roofener has an Associate degree and has worked as a medical insurance clerk, patient registration clerk, administrative clerk, file clerk, assembly line worker, legal secretary, receptionist, sales attendant, waitress, and assistant manager.

Roofener was healthy until she was in a motor vehicle accident in December 2001. Over approximately six months, her pain improved but then became worse and has not subsided. By June 2002, Roofener reported two months of increasing exhaustion to her treating physician, Dr. Ewanchyna, as well as the increased pain. The pain and fatigue also caused depressive symptoms in Roofener which were not severe enough to require ongoing treatment with antidepressants. On July 31, 2002, Dr. Bennett, a rheumatologist at Oregon Health & Science University ("OHSU"), diagnosed Roofener with fibromyalgia. She has been treated with pain medication, physical therapy, trigger point injections, acupuncture, massage, and independent exercise programs.

Roofener complains of burning, aching, stabbing pain throughout her body. The pain occurs daily for periods of 30 to 60 minutes, about 5 times a day on a good day and 12 to 20

Page 5 - OPINION AND ORDER

times a day on a bad day. A typical week has three good days and four bad days. The pain is triggered by any extended sitting, standing, reaching, kneeling, or squatting and by all the usual household chores. Lack of rest or overdoing tasks makes the pain worse. Roofener has to rest for about two hours after sixty to ninety minutes of doing any task. At the hearing, Roofener modified her estimate to require a 20 to 30 minute break after 30 to 60 minutes of a task. On average, she can perform one major chore household chore a day. She takes three 90 minute rests each day. With the aid of amitriptyline, Roofener sleeps eight hours a night, typically waking twice each night. On half of the mornings, however, Roofener does not awake feeling refreshed. She takes codeine for pain only about four times a month on average.

Roofener lives with her husband and two children who attend elementary school. Although she still volunteers at their school, Roofener's volunteer activities have been cut by 75 percent. As of February 2003, Roofener still volunteered in her children's classrooms a couple of times a week. Roofener walks her children to and from school each day, walking the seven-block trip four times each day. Because she is more tired in the afternoon, Roofener will rest for 15 or 20 minutes once she reaches the school before the family walks home. The walking helps manage her pain.

## DISCUSSION

I.    <u>Roofener's Credibility</u>

Roofener argues that the ALJ's conclusion that her daily activities are not consistent with disabling pain and fatigue is an error of law and not supported by substantial evidence. Roofener notes that her treating physician encouraged continued exercise. She also argues that the ALJ mischaracterized her use of pain medication.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

A claimant can have occasional symptom-free periods, including the sporadic ability to work, and still be disabled under the Act. Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1996).

The ALJ stated:

> The allegations of the claimant are not entirely credible in light of her daily activities and the treatment record. While the claimant may rest during the day, there is no evidence that this is a medical necessity. Despite her pain and fatigue she volunteers at her sons' school, walks 7 blocks to school and back twice a day, cares for her children, performs household chores, prepares meals, drives and runs errands. She participates in Boy Scouts activities and a parent club. Her activities are not consistent with her allegations of debilitating fatigue and pain. The claimant is prescribed Codeine but testified that she took this medication only 4 times in the past 30 days. Her minimal use of pain medication is not consistent with her allegations of debilitating pain.

Page 7 - OPINION AND ORDER

Tr. 14.

Roofener testified that she tried to use alternative methods of pain relief because she did not want to take codeine unless she had to. The record indicates that she has used physical therapy, massage, acupuncture, and exercise programs. Her treating physician congratulated Roofener's intent to perform some type of exercise five days a week, including yoga, Tai Chi, and water exercise. Roofener also discussed with her treating physician the possibility of weaning off the prescription anti-inflammatory and amitriptyline and switching to a vitamin regimen and the herbal supplement valerian to treat inflammation and insomnia. Moreover, her fatigue would not be alleviated with codeine.

Fibromyalgia does not have a cure. Instead, physicians try to alleviate the symptoms and teach the patient how to best live with the disease. Dr. Bennett, a specialist in fibromyalgia at OHSU, recommended a gentle stretching and aerobics exercise program, as well as physical therapy. He recommended medication for pain and nonrestorative sleep. Dr. Bennett did not believe that Roofener's depression was severe enough to warrant medication. He also did not prescribe anything for Roofener's fatigue but noted one medication that helped some patients.

Roofener's 28 blocks of walking her children to and from school is divided into two periods, morning and afternoon. She rests at the school before returning home. This level of exercise is not inconsistent with Roofener's complaints of pain and fatigue.

Roofener does engage in the activities that the ALJ listed but at a level which is greatly reduced from her pre-accident activity. Her activity level is also inconsistent from day to day, as she has good and bad days. There is no evidence to dispute the testimony of Roofener and her husband that she plans out her life carefully to limit the amount of activity in any one day. I also

note the treating physician's note that Roofener has no need for secondary gain and was following all suggestions for managing her symptoms. Further, Roofener had a solid work history, even with two small children prior to her illness.

I conclude that the ALJ failed to state clear and convincing reasons for the rejecting Roofener's testimony.

II.     Other Conclusions Based on Roofener's Daily Activities

The ALJ also discredited the testimony of Roofener's husband and her treating physician, Dr. Ewanchyna, because the ALJ believed the evidence was not consistent with Roofener's daily activities.

Roofener's spouse testified that his wife has a lessened ability to do things for longer than 30 to 60 minutes, to be in a stationary position for any period of time, to do repetitive movements, to be dependable because of the need to rest on bad days, and to be in stressful situations.

On September 4, 2002, Dr. Ewanchyna limited Roofener to four hours of desk duties a day, with a few limitations such as the frequent need for stretching. On October 11, 2002, Dr. Ewanchyna concluded that Roofener could no longer work until further notice, due to chronic pain, chronic fatigue and problems with mood functioning, all secondary to fibromyalgia. On March 7, 2003, Dr. Ewanchyna concluded that Roofener's inability to work was permanent.

On August 4, 2004, Dr. Ewanchyna completed a Fibromyalgia Residual Functional Capacity Questionnaire for Roofener. He stated several limitations. Roofener would frequently (34% to 66 % of an 8-hour work day) have symptoms severe enough to interfere with her attention and concentration needed to perform simple work tasks. Roofener could only sit or

stand for 30 minutes before needing to change positions. She could sit for less than 2 hours in an 8-hour day and stand or walk for less than 2 hours in an 8-hour day. Every 30 minutes, Roofener would have to walk around for 15 minutes. She would need daily unscheduled breaks for a minimum of 15 to 30 minutes to lie down. Roofener could occasionally lift less than 10 pounds and would have significant limitations with reaching, handling, or fingering. In Dr. Ewanchyna's opinion, Roofener would miss more than 4 days of work per month.

For the same reasons stated when I discussed Roofener's credibility, I conclude that the ALJ improperly discredited the testimony of Roofener's husband and her treating physician, Dr. Ewanchyna.

III.    Remedy

The issue then is whether to remand the case for further hearing or to make a finding of disability now.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id. The ALJ's hypothetical did not contain all of Roofener's limitations and thus resulted in invalid vocational expert testimony.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability

can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

This is the unusual case in which a person with an active life and long work history became unable to work, in her opinion and the opinion of her treating physician, and also severely curtailed her family activities, in a short amount of time. I see no reason to have the ALJ reconsider Roofener's credibility. Due to the nature of the illness, her treating physician's opinion that Roofener is unable to work is also based to a large extent on her subjective testimony about the severity of her symptoms. Given Roofener's need to take breaks, and miss work more than four days a month, it is clear that she is not currently employable. Consequently, there is no need for rehearing. I remand the case for a finding of disability.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this   28th   day of September, 2006.

          /s/ Garr M. King
          Garr M. King
          United States District Judge